You're familiar with our routine here, so I don't need to rehearse it, but do watch your time, okay? Yes, Your Honor, and I would if I go over to reserve at least a couple minutes for rebuttal. Okay, I'll try to remind you, but you have to watch your time. Thank you. There is a trap door out there that's very effective. I have fallen through that trap door, I think, on occasion. Okay, please proceed. Michael Crowley and Emily Crowley on behalf of Mr. Snowden, who, of course, is not present. Your Honors, the sentencing hearing, which is obviously the issue in this case, began with the court, the district court, acknowledging that there had been objections filed, but the court stated, I decline to rule on those objections. They will not affect the sentencing. So he said that eventually he did rule. He did. Yes, he did rule without the benefit of ruling on the objections. If the court is saying that implicitly he ruled on the objections by eventually saying he accepted the pre-sentence report factual findings, my concern is that it's very specific in the rules of Federal Procedure 32I, Paragraph 3, Paragraph B, that the court is supposed to make specific rulings. It's also in the guidelines. That's assuming, of course, that your client did what was necessary to trigger Rule 32, right? Yes. Did he do so in this case? I believe he did because not only does the rule kind of give an out in the sense that it allows for any worthy objection, but he did file written objections. I understand that they were written somewhat late, and perhaps the government has argued that they were not specific enough. Wherein were they specific? They seem incredibly ambiguous to me, and I'm struggling with how he triggered Rule 32. Help me out. Well, first by filing the writing, and second of all, this notion of lack of specificity or timeliness is first brought by the government here on appeal. Nobody objected at the trial court level to them being untimely or not specific enough. Perhaps because they viewed it as being insufficiently specific. Well, then that should have been stated on the record and then given the opportunity to counsel to make them more specific, both under the escape clause, as I call it, in 32, that allows for any reasonable objection to be able to be brought, or perhaps a continuance because the court did not have the, didn't think that it was made with enough specificity. But I think that it. But even in oral argument, he didn't actually contest the facts. He didn't say, oh, but, Your Honor, there was, my client didn't know about the methamphetamine, or no, there really only were three. These other five names didn't count. I mean, they never actually gave any factual rebuttal to the facts that the probation officer laid out. Okay. Well, I would respectfully disagree with that factual analysis because he said, first of all, he deferred to Mr. Braverman in saying that the way that the facts concerning the methamphetamine part were, that is not contemplated. Mr. Braverman did use the artful language of saying that he hadn't, Mr. Snowden had not accepted responsibility. But he also stated that there was information provided about that that could have been for a different person. This was part of the San Diego operation. The defense attorney said that. The defense attorney said that. In a hypothetical kind of way, he didn't, like, proffer a factual dispute and say, my client didn't know about the meth or the meth was for somebody else. It wasn't for my client. I mean, he said that could be the case. Yes. Make a factual dispute. Wouldn't he have to actually proffer that that was the case? Well, I think by putting it in play in the written objections and then stating that, by all accounts, both sides of the government and the defense saying that he only took responsibility from the government side. Did he say directly that I am going, you know, that we factually dispute this? I think he came pretty close in the record. It's in the area of his whole colloquy is in the excerpts of record of between 55 and 57 in the excerpts of record. But, counsel, if we view what he said as being very ambiguous, the only specificity that I see that he brought up was in paragraph 22 concerning the handgun and paragraph 52 to make certain that the court knew that the medication he's taken was not for genital herpes but rather was for shingles. Yeah, that's interesting that the court addressed those two. Those are the only specific things he raised, right? Well, he raised those both in the sentencing memorandum and in the court. Do you agree that he has the burden of specificity here to trigger Rule 32? I don't see any case law that says you have specificity. There were some out-of-circuit cases, but the Ninth Circuit and the rule allows for those objections to be able to be made at the time. Let's assume for a minute that it's unclear and say that the objection was properly made under United States versus Gadsden. Does it make any difference here? In effect, do we have harmless error? Oh, you know how I do dislike that phrase. But I don't think it is harmless error. It's certainly not harmless to Mr. Snowden because he's ending up spending more than five years extra in custody. But once again, this is first raised on appeal. If there was a real problem with specificity, why wasn't it raised at the court level? As defense counsel, we're always concerned with making sure that we have the complete record because we know that when we get up to the Court of Appeals, they're going to say it wasn't raised in one way or another. And then they're saying, well, now you're just raising that for the first time on appeal. So we move on. You say there's no case law. What about United States versus Petrie? It says, absent objection, the district court did not err in relying on the PSR when there's no specificity. In this case, the court relied on the PSR, right? But there were objections. But not specific objections. That's the point. Your client's objections were almost metaphysical. I think, doesn't he have to be specific? What did he object to? And that's where I'm, that's what I'm troubled with. I understand. I understand what the court's saying. I don't think that the case law is specific enough about specificity. And if it was, then the court, as often happens, the district court should have brought it up and said, I don't quite understand your objections. They're metaphysical. So I want you to be more specific about them. What about Gadsden? Let's assume you're right. Say he raised enough and that the court didn't adequately address it. Isn't this a harmless error analysis under Gadsden? Here's my concern about any kind of harmless error analysis is that, as the court asked for additional briefing from the Supreme Court, we do have an erroneous guideline because the failure to make the facts and to rule on the facts as laid out in the objections, stating that they would not have any effect on the sentencing, which has turned out was completely erroneous, it did have a very profound effect on it because the judge accepted it. Then let's turn just a little bit to the analysis. You have the government not putting forth any information. Thank you. You can do whatever you want. I appreciate it. The government did not. They have the burden on the drug type and the drug amount. They didn't proceed in any way to meet their burden because, obviously, they were bound by the plea agreement, but that was the agreement. So there was nothing before the court other than the notion that I thought we learned from Blakely, which was just having probation officer read the discovery and then make an opinion about it leads to very disparate sentencing and unfair sentencing. So with that, I'll save a little bit of time. Okay. Thank you. Very good. Let's hear from the government. Good morning, Your Honors, and may it please the court. My name is Adam Braverman on behalf of the United States. In this case, the district court did not clearly err by including the methamphetamine in the guideline calculations and by concluding that the facts supported an aggravated rule adjustment. Before imposing sentencing. Just give me the base offense level calculation. Did it include the two-level decrease for the pending or upcoming minus two? The court, when it came to its guideline calculations, included the adjustments pursuant to the amendments. So we end up with 36. Correct, Your Honor. Net of the two-point reduction, but with the meth addition and the enhancement. That's correct, Your Honor. Okay. Yes. Remind me, what was the government's position with regard to the plea agreement and sentencing? Because the government, I'm assuming the government drafted and then negotiated subsequently the factual basis with the defense and methamphetamine for this particular transaction was not included, right? That's correct, Your Honor. In this case, the plea agreement was a negotiated agreement between the parties and defense specifically requested not to include the methamphetamine because, as this court is aware, there was a significant swing in the guideline calculations because of the methamphetamine. So the defense at the time of the negotiated plea agreement meant to basically leave the argument for sentencing that the scope of relevant conduct shouldn't include the methamphetamine for this particular transaction. I'm assuming that's why the plea factual basis was stated the way it was, right? That's correct, Your Honor. And so at sentencing, I agree with my colleague's comment that the specificity of the objection was lacking, but when the defense stood up at the sentencing hearing and said, we never accepted responsibility for the methamphetamine, did the government say anything at that point to say, well, we meant to carve this out or anything like that? We did not, Your Honor, because we were bound by the plea agreement. We were very careful at sentencing to acknowledge to the court that we were standing by our plea agreement and the factual basis contained therein. And I think that's a very important point that the court brought up because before imposing sentencing in this case, the district court commented that it was being asked to simply look at a plea agreement and confine the defendant's drug trafficking activity to a limited set of facts when in reality that was not the case. Could you not interpret the defendant's plea agreement as being an understanding that that would not be considered any more than the homicide would be considered, that the meth wouldn't be considered? Maybe that's what the defense was thinking. I was curious whether this is a common form of plea agreement in the Southern District. It was a surprise to me to say that if you got up to a certain point, you were bound, but if you got more than that, then you could appeal. In this case, if he got more than 135 months, he could appeal. Query on what grounds he would be able to appeal. It seemed like an unusual plea agreement to me or not one that we see in the Northern District. It's an unusual case itself because of everything that was attended in this case. It is a standard plea agreement that allows the defendant to appeal if the court gives higher than a guideline sentence. What do people think they're going to appeal on? Just the general reasonableness, three, five, five, three factors? Yes, Your Honor. Let me ask you this, counsel. At ER 71, without quoting the exact language, my understanding is that the defendant acknowledged that he knew that the court would consider the methamphetamine and he agreed to recommend the mandatory minimum knowing it was going to be above the guideline sentence. Is that correct? That is correct, Your Honor. So that somewhat alleviates the concern that might otherwise exist. He acknowledged he knew the meth was being considered and he acknowledged that it was going to be an above-guideline sentence, right? Without a doubt, Your Honor. And it's important to point out that at the- I'm sorry. Could you explain that a little more? I don't understand that. Yes. During the sentencing hearing, the defense attorney at the sentencing acknowledged that when the parties were negotiating the plea agreement, that the parties, and specifically the defendant, had anticipated that the court may consider the methamphetamine as relevant conduct. So the guideline calculations in the plea agreement were below the 120 mandatory minimum threshold, and the defense attorney stated that he'd agreed with the government to recommend the aggravated rule adjustment for it to trigger the mandatory minimum sentence because he realized that there would be some type of calculation involving aggravated conduct. Well, I remember that with regard to the supervisory role, but that was with regard to the methamphetamine as well? Yes, Your Honor. Yes, under ER 71, page 71. Can you address the evidence with regard to role, the evidence that he exercised control over the other individuals involved in the conspiracy versus being the person who basically put in an order and then everyone did whatever they had to do? Yes, Your Honor. So that it got to him? In this case, the pre-sentence report lays out the facts in this case, and here the conspiracy included five or more individuals. The defendant himself admitted that there were at least five people in the conspiracy as part of his plea agreement at ER 13. But the pre-sentence report also indicated, and the district court specifically adopted this analysis at sentencing, that the defendant hired others, in this case an individual named Tony Wakefield, to locate addresses to ship drugs that were coming to Mr. Snowden in South Carolina. Number two, the defendant hired drug traffickers to curry drugs from the West Coast to the East Coast, in this case an individual named Craig McGruder that he had hired to come to San Diego and to drive back drugs to South Carolina. And then finally, the district court also pointed out that the defendant hired money couriers to transport narcotics proceeds to San Diego. Turning back to the meth and fentanyl guidelines, I think it's important to point out, and I think this court recognizes, that the facts contained in the pre-sentence report, that the pre-sentence report concluded that the 421 grams of methamphetamine were being imported on behalf of Snowden, that fact is uncontroverted. There was not a specific objection to that pre-sentence report finding. And as this court recognized in the United States v. Petrie, there is that requirement that a specific factual objection alleging an inaccuracy is required. Whose obligation is it to note that lack of specificity? It would be the burden of the party alleging it. It's the burden of the defendant to file objections to the pre-sentence report. I understand that, but when they filed what they consider to be objections under Rule 32, if the government doesn't think those are adequate to meet the specificity requirement, isn't it the burden of the government to so indicate? Your Honor, the situation here was that it was a negotiated plea agreement, so the government was bound by the plea agreement and was bound not to make arguments that the methamphetamine should apply. Basically, I have ER 71 right here, and it's Mr. McDonald who talks about specifically, said, recognize the court has an obligation to consider all the facts. I recognize at that time, as did Mr. Braberman, the court would consider the methamphetamine, at least in the nature of relevant conduct, despite what we said. So is your point that as far as the meth is concerned, that's an admission by counsel, that that was going to be considered, and that what was said was metaphysical? Basically, it went to other points and not to this issue. Yes, Your Honor, and I think the court pointed this out before, that when you look, first off, there were no objections filed. But even if you look at the defendant's sentencing memorandum filed two days before sentencing, the defendant's factual objections and the specificity really focus, as this court pointed out, on the handgun that was seized at the time of his arrest and on the medication he was taking. Everything else is about as general as you can imagine. Would we review this for plain error, basically, then? Yes, Your Honor. Okay. And unless the court has any other questions, the United States would submit. Okay, thank you. Thank you. Rebuttal, counsel. Thank you, Your Honor. Your Honor, speaking to that specific point of the alleged admission by the defense attorney. You say the alleged admission? I do, because I don't think it's an admission. They discussed it. That is why the counsel discussed it. That is why the plea agreement was crafted the way it was. That's why the defendant entered a plea agreement that specifically did not have factual basis. Not in some way to get around the guidelines, but there was a lack of factual basis for it. That, in fact, if you look in the pre-sentence report, it actually talks of, I mean, in the argument at sentencing, and this is at ER 56, early on, the DEA investigation zeroed in on Mr. Snowden, specifically concerning marijuana and cocaine, nothing to do with methamphetamine. Okay, but for our purposes, counsel, we've got the defense counsel acknowledging the court's going to take meth into account. We have a harmless error analysis that's called for under Gadsden. Why is this not harmless error? It's not harmless error because the court failed to follow their duty in going through the factual basis, because if it had been brought up, if it had done, if he had gone through those objections, you would have found, and the government would have backed it up, that there was a lack of factual basis that the methamphetamine should be attributed to him, both from the beginning of the investigation all the way through to the end. He had nothing to do with methamphetamine, and that's why specifically, and that's why he could swear under oath at the time of the change of plea that, yes, he was responsible for the cocaine, but not for the methamphetamine. I think we have your argument. Any questions? Yeah, I have one other thing. What's your client's factual dispute with respect to the five people? What would be his hypothetical speculative response to the fact that there were five people instead of just three people? Right. That he was operating, essentially, I think the way counsel put it at the court, on a COD basis, a cash on delivery. He was there as a customer in South Carolina. People were bringing it to him. All the rest of the people were not under his supervision. Even though they were described in the plea agreement, they were part of it but not under him. Exactly. All right, well, thank you to both counsel for your argument. The case just argued is submitted.
judges: M. Smith, Nguyen, Wilken